PEMBERTON *against* PARKE and others executors of PEMBERTON.

C ASE stated for the opinion of the Court.

" On the 1st day of *April* 1794, *John Pemberton* made his " will, and thereby *inter alia* bequeathed as follows:—" To " the children and grand-children of my brother *Israel Pem-* " *berton* deceased, (excepting *Mary Fox* and her children, she " and they not needing it,) to be equally divided among *those* " *of them* who may be *then* living, saving that my cousin " *Sarah Rhoades* shall have two shares thereof, two thousand " pounds."

" The word *then*, it is agreed refers to the time of the " death of the testator's widow *Hannah Pemberton*.

" The testator died on or about the 31st of *December* 1794. " The widow died on the 22d day of *June* 1811. At the " time of her death there were living *Mary Pleasants*, who " was a daughter of *Israel Pemberton*, eight children and " thirty-six grand-children of *Mary Pleasants*; three children " of *Joseph Pemberton* who was a son of *Israel Pember-*

*Margin note:* 1813. M'KINLEY v. M'CALL.

*Margin note:* Philadelphia, Monday, July 12.

*Margin note:* The testator bequeathed two thousand pounds "to the children "and grandchil-"dren of his "brother *I. P.* "deceased, ex-"cepting *M.* "*F.*" (who was a grandchild of *I P.*) "and her "children, she "and they not "needing it, to "be equally di-"vided among "those of them "who may be "*then* living," (*viz.* at the death of the testator's widow) "sav-"ing that his "cousin *S. R.* "should have "two shares

" thereof." *Held*, 1. That the great grand-children of *I. P.* took equally with children and grand-children. 2. That all who were alive at the death of the testator's widow, whether born before or after the testator's death, were entitled to take.

" *ton*, and five grand-children of *Sarah Rhoades*, who was a " daughter of *Israel Pemberton*. *Mary Fox* was a *grand-* " *child* of *Israel Pemberton*. The plaintiff is one of the grand-" children."

" All the parents of the great grand-children, except Mrs. " *Rhoades's* son and daughter, are alive, and were alive at " the making of the will and codicil, and the death of the " testator."

" The questions submitted to the Court are, 1st. Whether " children and grand-children, only, alive at the widow's " death, are to take. 2dly. Whether if great grand-children " are to take, those born after making the will, or those born " after the testator's death, are to come in with the other " great grand-children for a share."

*Tilghman* for the plaintiff.

1. Great grand-children do not take. The words of a will are to be understood, generally, as they are used in common parlance, unless they have acquired an appropriate legal meaning. In that case they must be taken in the appropriate sense, provided it is not plainly against the testator's general intent. The words *children* and *grand-children* have no appropriate legal meaning; the sense in which the testator used them, must therefore be ascertained by a reference to his will, and the popular signification of the terms. In the present instance, *children* cannot include all the descendants of *Israel Pemberton*, because the testator goes further, and specifies *grand-children*. *Grand-children* cannot include *great grand-children*, because the testator, knowing that his brother had all three descriptions of descendants, confines his bequest to two of them. Expressing the two first excludes the last. He could not have used *grand-children* in a comprehensive sense to include great grand-children, because he did not use *children* so. He evidently used both terms in the popular sense. The amount of the legacy, and the number of legatees are a further proof of it. If great grand-children are excluded, there will be seventeen to share, and the family of *Mary Pleasants* will take nine-eighteenths, *Sarah Rhoades* taking a double share; if they are included, there are fifty-three legatees, and the *Pleasants* family take forty-five parts. The testator must have seen that such a division would reduce the legacy to a trifle, and would place the remotest descendant upon a foot-

ing with the *Pembertons* and *Sarah Rhoades*, except as to her double share, and that would come to little. He therefore guarded against it by mentioning two classes only; and there is no case where the Court has disregarded such a division, and extended it to a third.

2. If great grand-children take, those only can do it, who were alive at the testator's death, and also at the death of his widow. " To the children and grand-children of *Israel* " *Pemberton*," is plainly to persons in being. " To be equally " divided among those of *them* who may be then living," is restrictive, and does not extend to the unborn. The general rule is, that persons referred to in a will, mean persons living at the testator's death. In *Northey* v. *Burbage* (a) it " was agreed by the Court, that a devise to all his children " and grand-children, extends only to those who were in esse " at the time when the will was made, for then the will speaks; " and none born after are to be let in, unless there had been " future words in the will." In subsequent cases it is extended to the testator's death, that being the time when the will speaks. In *Ellison* v. *Airey* (b) Lord *Hardwicke* says, that " the Court will not construe a will to extend to persons " not in being, unless the testator shews his intention to be " such by words in the will; as it tends to make property un- " certain, and to the inconvenience of making more divisions " than the testator meant." In that case the counsel cite *Web* v. *Web*, which is strong to this point; for that was a devise of the residue of personal estate to the testator's brother and *all* his children, to be divided amongst them share and share alike. The brother had several children; and six months after the testator's death, another child was born. Lord *Talbot* held that this child could not take. In *Horsley* v. *Chaloner* (c) the devise was to the younger child of the testator's son, and if more than one, then to such younger children, equally to be divided, and to be paid at their respective ages of twenty-one; and if any died before twenty-one, then to survive to the others. A child born after the testator's death was excluded. In that case as in the present, the payment was to be made at a future day, and among those who should survive. In *Coleman* v. *Seymour* (d) the devise was to the wife of *C.* for the use of her younger children as she should ap-

(a) *Prec. in Chan.* 470.    (b) 1 *Ves.* 114.    (d) 1 *Ves.* 209.
    1 *P. Wms.* 341, *S. C.*    (c) 2 *Ves.* 83.

PEMBERTON
v.
PARKE.

point; and the children of her second husband were excluded. To the same principle, are *Heath* v. *Heath* (a), *Hodges* v. *Isaac* (b), *Gartland* v. *Mayot* (c) and *Cook* v. *Cook* (d).

*Rawle* for the defendants.

1. Great grand-children may take under the term *children* or *grand-children*, and it was the particular intention of this testator, that they should take. The term children includes all descendants. In *Wythe* v. *Thurston* (e), grand-children and great grand-children were both embraced by it. In *Wyth* v. *Blackman* (*f*) and *Gale* v. *Bennet* (*g*), the same construction is given to it. The term grand-children is a word of still larger import. It takes in every body descended from the testator, and will have that effect, unless the intention appears to the contrary. *Hussey* v. *Dillon* (h). The circumstance of naming both classes ought not to limit the extent that either term would have by itself; for the intention to include all, is the more manifest from the use of the two terms which in popular language embrace all a man's descendants. In this case however the intention is made perfectly plain by the exception of *Mary Fox* and her children. The testator knew that *Mary Fox* was a grand-child, and that her children were the great grand-children of *Israel Pemberton.* He excepts both from the benefit of the legacy; that is, he excepts particular great grand-children, which is conclusive to shew, that he considered them as included by the general terms of the legacy. This certainly disarms the argument that is founded upon the specification of two classes only, and which has considerable force. It shews that the testator in the present case meant to comprehend more than the mere terms are supposed to comprehend; and against so plain an intention, the inconvenience of splitting up the legacy into small parts, is nothing.

2. The general rule I admit, that where persons are spoken of in the present time, such only are embraced as are living at the death of the testator, unless an intention to the contrary appears. But the rule does not apply to this case, because the intention is to the contrary; for the legacy does not vest until the death of the testator's widow, and the division is to be made among such as may be living at that time. It is

| | | |
|---|---|---|
| (a) 2 *Atk.* 121. | (d) 2 *Vern.* 545. | (*g*) *Ambl.* 681. |
| (b) *Ambl.* 348. | (e) *Ambl.* 555. | (h) *Ambl.* 603. |
| (c) 2 *Vern.* 105. | (*f*) 1 *Ves.* 196. | |

the same as if the testator had given the legacy among such of the children, grand-children, and great grand-children of his brother, as should be living at the death of his widow. There is no inconvenience in admitting all up to that time, because until then no one takes in certain, and it is impossible to imagine a cause of preference in the testator's mind, of persons born after his will and before his death, over those born after his death, and before that of his widow. The inconvenience to legatees then in being, by introducing new partners, would be obviated by the probable death of some of the old ones. Where the description is general, there is no other safe rule, but to comprehend all who come under it at the time when the bounty is to be distributed.

*Reply.* 1. The exception of *Mary Fox* and her children ought not to have the effect contended for. If children and grand-children stood alone, it is admitted the argument would have force; it is reasonable then to endeavour to account for any thing of a contrary tendency, so as not to destroy such argument. This may be done in two ways. First, by the drawer of the will's mistaking *Mary Fox*, whose maiden name was *Pemberton*, a daughter of *Charles Pemberton*, for a daughter of *Israel.* If in *Hussey* v. *Dillon*, the mistake of calling Miss *Hussey* a grand-daughter, when she was a great grand-daughter, did not prevent great grand-children from coming in, which was the general intent there, the mistake of treating a great grand-child as a grand-child, ought not to prevent great grand-children from being excluded, which is the general intent here. Secondly. As *Mary Fox* was a grand-child, it was necessary to mention her to exclude her, and the meaning was that neither she, nor her children under her should take. But what is said as to *Mary Fox* is an exception. Now an exception proves the rule, but does not destroy it. The construction given to this exception, makes it broader than the rule, and is a plain contradiction of the terms of it; it ought so to be interpreted as to make it restrain, and not enlarge the previous terms.

2. It is admitted that a devise in present terms generally includes existing persons; but that here it does not, because it is the same as if it had been to such as should be living at the wife's death. This is substituting an original bequest of a future nature, in the place of a present bequest to a certain

1813.

PEMBERTON
v.
PARKE.

description of persons, to be lessened as to its objects, by their dying before a certain time; and this original bequest of a future nature, is to increase the number of objects, so that the testator could not know what was given to such of his first objects as might outlive his widow. There is no resemblance between the actual and the substituted case. The devise is in fact the common one of a devise to certain persons, but if some die before a certain or uncertain time, the survivors to have all; this is not a part of the bequest, but a restriction of it.

TILGHMAN C. J. Two questions are submitted to the Court in this case on the will of *John Pemberton.*

1. In the case of *Hussey* v. *Dillon*, Lord *Northington* says, that in common parlance, the word *grand-children* includes *great grand-children* and all other descendants. In this I think he goes too far. In common parlance we understand *grand-children* to mean *children of children.* But it is certain that where it appears by the will, that the testator meant to comprehend great grand-children, the Courts have given it a construction agreeable to the intent. Let us see then whether any thing appears in this will from which the intent of the testator may be inferred. He must have known very well that the children of *Mary Fox* were great grand-children of *Israel Pemberton*, and when he excepts *Mary Fox and her children* from any share of this bequest, he must have supposed that without such exception they would have taken. The inference is very strong, that he intended to let in great grand-children; so strong indeed that I am unable to resist it, although it leads to the inconvenience of cutting up the 2000*l.* into such small portions, as makes them of little value. I am therefore of opinion that the great grand-children come in for a share equally with the children and grand-chidren.

2. The next and more difficult question is, whether this bequest is to be limited to those persons who were in being at the death of the testator. If this will had been put into my hands, and I had been asked for my opinion of the testator's meaning, without argument or reference to authorities, I should have said at once, that he intended the 2000*l.* to be divided among all the children and grand-children of *Israel Pemberton*, who should be living at the death of his widow

*Hannah Pemberton*, without discrimination; for I perceive nothing which affords any indication of an intent to exclude those who should be born after the death of the testator. He looked forward to the *death of his widow*, as the period at which his bounty was to be distributed. It was very natural therefore to intend, that *all* those who were *then* living, and *only those*, should share the legacy. But it has been very ingeniously and ably argued by the plaintiff's counsel, that according to established rules of construction, no persons shall be included in this bequest, but those who were in existence at the death of the testator. I have carefully examined the cases cited on the argument, and am of opinion that neither the rule, nor the reason of the rule, is applicable to the case before us. Before I consider these cases, I will state what the rule appears to me to be. Where a man devises a sum of money *generally*, to be equally divided among the children of *A*, those only who are in being at the death of the testator shall take; the reason is that it was the intent that the legacies should be vested at that time, and that the legatees should then receive their money. Now if *all* the children are let in, they must *all* wait till *the death of A*, before any one of them receives his legacy, because until the death of *A* it cannot be known how many children he may have. The result might be, that instead of the children taking, many of them might never take: they might die in their father's life time, in consequence of which their share would indeed be transmitted to their representatives, but would be of little benefit to them personally; or if they survived their father, the legacy might come so late as to be of little service. But where the testator declares his intent that the legacies shall not vest till *a future time*, there can be no good reason why all those who were born before that time should not be let in, unless there be something in the will to the contrary. I will now take a view of the cases cited.

In *Northey* v. *Burbage*, *Pre. in Ch.* 470, it was said by the counsel and agreed by the Court, that a devise to " *all his children and grand-children*," extends only to those *in esse* at the time *the will was made*, for *then* the will speaks, and none born *after* are let in, unless " there had been future " words in the will &c." This case goes rather too far. It would have been more accurate to say, that none born after

1813.

PEMBERTON
*v.*
PARKE.

CASES IN THE SUPREME COURT

the *death of the testator* are let in. But it comes within the distinction I have marked. It is a devise generally to children and grand-children.

*Ellison* v. *Airey*, 1 *Ves.* 111, was a devise of 300*l.* to *A*, to be paid at her age of twenty-one or marriage, and interest in the mean time for her maintenance and education; " but if " she died before twenty-one or marriage, then to the younger " children of her nephew *B*, equally to be divided to and " among them." Lord *Hardwicke* was of opinion, that it meant *such as should be younger children at the death of A before twenty-one or marriage;* " because it was a contingent " legacy, and there was no reason to confine it to the time of " making the will, or the death of the testator, for neither was " the time upon which the legacy was to vest, and therefore as " the whole was suspended until the death of *A*, there was no " inconvenience to wait till then." This reasoning is strong, and bears directly upon the case under consideration; for here the legacy is contingent, and not to vest until the death of *Hannah Pemberton*.

*Horsley* v. *Chaloner*, 2 *Ves.* 83, was a devise of 200*l.* " to " *the younger children* of *A*, equally to be divided, and to be " paid at their respective ages of twenty-one; and if any dies " before twenty one, then to survive to the others:" held by the master of the rolls, that this devise comprehended those children only who were born *at the death of the testator*, because the extending it to those who should be born after, would defeat the will of the testator, who intended that each child should receive his legacy on attaining the age of twenty one; whereas if *all* were to take, " it would be necessary to " wait till the death of *A*, because it could not be known " sooner, who would be entitled."

*Coleman* v. *Seymour*, 1 *Ves.* 209, was a devise to testator's daughter *A*, wife of *B*, of 3000*l.* " for the use of her younger " children, to be by her distributed among them, in such " manners, shares, and proportions as she shall think fit, and " if no appointment made by her, then equally to be divided " among her younger children, and to survive, if any of the " children died under age, or unmarried." The question here was, whether the younger children by a *future husband* should take; held that they should not, for sufficient reasons mentioned by lord *Hardwicke*, but not at all depending on the rule of construction set up by the plaintiff's counsel in this

case. On the contrary, so far as concerns that rule, his expressions are as follows: " There have been different determinations of this sort of cases, whether *children* or *younger children* should relate to those born at the *making* of the will, or *after* the will, or *further* in the *life* of the person, in whose power it was committed for life; and *no general rule has been laid down,* but always construed according to the particular words, circumstances and views of the testator. I am delivered from any difficulty which would have arisen, had there been any children by B, *subsequent* to the making, for they were all born *then.*"

In *Heath* v. *Heath,* 2 *Atk.* 121, *A* devised lands to his wife *B* for life, and after her death to *C* in fee, charged with the payment of 400*l.* within six months after *B's* death, *among all the children of E,* share and share alike. After the testator's death, his widow *B* made her will, and gave all her personal estate, " *among all the children respectively male or female of E.*" Some years after the death of both the testators, *another* child of *E* was born: held that it could not take, and very properly, because six months after the death of *B* at furthest was the time for vesting the legacies under *A's* will, and the legacies given by *B* would vest immediately on her death.

*Gartland* v. *Mayot,* 2 *Vern.* 105, was a devise of 20*l.* a piece to *all the children of her sister B:* the question was whether a child born after the *making* of the will, and before the *death of the testatrix,* should take; held that it *should,* which is contrary to what was said by the counsel, and agreed by the Court in *Northey* v. *Burbage,* but throws no light on the present question.

*Cook* v. *Cook,* 2 *Vern.* 545, was a devise of real estate to the *issue of I. S.* The case itself is no way applicable, but was cited for the sake of a *dictum* of the Lord Keeper, that on a devise to *a man and his children* of a *personal* estate, a child born after the death of the testator, shall not take, for it vested on the death of the testator, and shall not be divested. This is just in conformity to the principle which I have laid down, and does not help the plaintiff, unless it can be shewn, that the devise in *John Pemberton's* will, was in general to the children and grand-children of *Israel Pemberton.* But that is not the case; for although in the beginning of the sentence, it is said *to the children and grand-children* of my brother

*Israel Pemberton,* yet it goes on to say, to be equally divided among those of them who may be then living, (that is at the death of my wife.) To get at the testator's meaning, the whole of the sentence must be read; and taking the whole we find, that instead of an immediate devise to any of them, it is but a contingent devise to such as shall be living at the death of the testator's wife.

I am therefore of opinion that all the children, grand-children, and great grand-children of *Israel Pemberton,* who were living at the time of the death of *Hannah Pemberton,* are to come in for a share of the legacy of two thousand pounds.

YEATES J. Grand-children are words of equivocal import, and may or may not include great grand-children, according to the sense in which they may have been used by a testator, collected from the whole of his will. Here the bequests to the children and grand-children of a brother, would *prima facie* evince an intention in the testator to exclude great grand-children; because as he must be presumed to know that his brother had great-grand-children living at the time of making the will, his enumeration of the second class of descendants, would naturally imply that his bounty did not extend beyond that second class. But that argument necessarily loses it weight upon the indication of a contrary intention in the will itself. The testator has excluded from the benefit of this bequest *Mary Fox* and her children. Now it is stated that *Mary Fox* was a grand-child of *Israel Pemberton,* the brother of the testator, and consequently her children stood, as to *Israel,* in the relation of great grand-children. The testator therefore has given his own exposition of the terms he has made use of; and by expressly excepting the children of a grand-daughter, has conveyed his meaning distinctly, that without such exception, such great grand-children of his brother would take; and of course that other great grand-children were not excluded, but all the rest of the great grand-children were to participate in this 2000*l.* If the drawer of the will has committed a mistake, we have no materials in our hands by which we can rectify it. The expressions in the will must be supposed to be those of the testator himself.

It is agreed by the counsel, that the words " who may be

"then living," in the concluding part of the sentence, refers to the time of the death of the testator's widow, which afterwards happened on the 26th of *June* 1811. This introduces the question, whether grand-children or great grand-children of *Israel Pemberton*, born after the death of the testator, and in full life when his widow died, shall take any share of this legacy?

In *Ellison* v. *Airey*, 1 *Ves.* 114, cited by the plaintiff's counsel, Lord *Hardwicke* says, no certain rule can be laid down in cases of this kind. They must be various, as a very few words will vary the evidence of the testator's intention, and consequently the meaning of the will. The Court generally takes it that there ought to be a legatee in being, and therefore will not construe a will to extend to persons not in being, unless the testator shews his intention to be such by words in the will. When there is a devise to children, if it was to be suspended till the death of the father, it might be little beneficial to any of them. But there are middle cases depending on the penning of a bequest, and he thought that before him to be of that kind. It was a contingent legacy, and there was no reason to confine it to the time of making the will or the death of the testatrix, for *neither* was the time upon which the legacy was to vest.

It is impossible to reconcile all the different decisions on this branch of the law; it would seem however that this general rule may be collected from the cases. Where the devise or gift to the children is general, and not limited to a particular period, it is then confined to the death of the testator. *Northey* v. *Burbage, Pre. Ch.* 470., *Heathe* v. *Heathe*, 2 *Atky.* 121., *Horsley* v. *Chaloner*, 2 *Ves.* 83., *Isaac* v. *Isaac, Ambl.* 348. But where such devise or gift is to one for life, or where the distribution is postponed to a future time, there children born during the life or before the time of distribution are let in. *Harding* v. *Glynn,* 1 *Atky.* 470., *Graves* v. *Boyle, Ib.* 509., *Houghton* v. *Harrison,* 2 *Atk.* 329., *Ellison* v. *Airey,* already cited, 1 *Ves.* 111.

The plaintiff's counsel has contended that the devise here to the children and grand-children, was *per verba in presenti*, and not *in futuro*, and that this is all important in ascertaining the testator's intention as to who shall take under it. But the whole will must be taken together, in order to form a judgment of its true meaning. We find therein that the testator

1813.

PEMBERTON
v.
PARKE.

gave the bulk of his estate to his widow during life or widow-hood; and "to the children and grand-children of his brother "*Israel Pemberton*, to be equally divided among those of "them who may be then living, 2000*l.*;" and the word *then* is agreed to refer to the time of the death of the widow. Until the death of the widow the legacy did not vest, but was suspended, and was clearly contingent as to such of the descendants as should survive the widow.

I am therefore of opinion that such of the children, grand-children and great grand-children as were living at the time of the death of the testator's widow, whether born or unborn in the life time of the testator, excepting Mrs. *Mary Fox* and her children, are intitled to share this 2000*l.* according to the true meaning of the will.

BRACKENRIDGE J. concurred.

Judgment for the plaintiff accordingly.