## Lewis's Estate.

Before Lamorelle, P. J., Gest, Henderson, Van Dusen, Stearne and Sinkler, JJ.

*Theodore S. Paul*, for great-grandchildren, exceptants.

*Thomas Stokes* and *Hepburn & Norris*, for estates of deceased grandchildren, exceptants.

*Eric A. McCouch* and *H. Gordon McCouch*, for Herman Le Roy, exceptant.

*Robert Dechert*, for Thomas R. Nelson et al., contra, in support of the adjudication.

GEST, J., September 11, 1931.—These exceptions present several questions which were argued with great ability by all the counsel who participated.

The testator, who died in April, 1881, had four daughters, Sarah Neilson, Amelia Le Roy, Julia Clark and Ellen Jackson (afterwards Coonan), and by his will, dated December 27, 1873, directed that the income of his residuary estate should be equally divided among them for their respective lives, and further provided: "And should any of my above named daughters die leaving no legal issue, the share or shares of such daughter or daughters of the net income from my estate shall be equally divided among the surviving sisters, and on the death of the last of my aforesaid daughters it is my will and I hereby direct that the whole of my estate, not herein specifically disposed of, shall be divided equally per capita among my grandchildren the legal issue of my aforenamed daughters." By a codicil dated February 9, 1874, the testator provided as follows: "Whereas I have always deemed unjust the common provision in wills of leaving to the legal issue of deceased children the share of an Estate to which the parent of such legal issue would be entitled if living without regard to the number of children which each child of the testator might leave, and have guarded against its application to the final distribution of my estate, I now wish in furtherance of the same principle to modify that provision in the seventh clause of my aforenamed will whereby in case of the death of either of my daughters leaving legal issue her said issue shall receive the share of the net income of my estate to which their mother would be entitled if living until the principal of said estate shall be finally distributed by substituting therefor the following provision, namely that on the death of either of my daughters leaving legal issue one eighth of the share of such daughter of the net annual income of my estate shall be paid to, or if minors for the use and benefit of each of her said chil-

dren and the residue if any of such share of the net income of my estate of the said deceased daughter shall be paid in equal portions to her surviving sisters."

Julia Clark died in 1885, without issue, and the income thereafter was divided among the three other sisters. Amelia Le Roy died in 1913, leaving two children, Jacob and Herman, so that thereafter the income was distributed, one twenty-fourth to each of Jacob and Herman, and eleven twenty-fourths to each of Sarah Neilson and Ellen Coonan.

Sarah Neilson died in 1919. She had eight children, six of whom, William, Frederick, Thomas, Lewis, Emma and Mary Alice, survived her. Sarah, another daughter, predeceased her mother without issue, and Robert died in 1894, leaving a daughter, Dorothy. The trustee filed an account raising the question as to the right of Dorothy to a share of the income formerly received by Sarah Neilson. The Auditing Judge said, after reciting the codicil to the will: "In view of the testator's purpose in making his codicil, no intelligible reason can be given for a construction that would disinherit Dorothy L. Neilson. His intention was merely to equalize the income among all his grandchildren or their issue, and his exact words being 'said children,' they manifestly refer to the 'legal issue' just before mentioned. The testator evidently provided for the distribution of the income of a daughter into eighths because of the fact that his daughter, Mrs. Neilson, had eight children, and he did not wish his other grandchildren to receive a greater share of income than the children of Mrs. Neilson received." And, accordingly, one-eighth of the income formerly received by Sarah Neilson was awarded to Dorothy, that is, one-eighth of eleven twenty-fourths. Exceptions filed by Ellen Coonan to this adjudication were dismissed by the court, Gummey, J., 30 Dist. R. 541, on the ground that the word "children" in the codicil included a great-grandchild. Thereafter Jacob and Herman continued to receive one twenty-fourth of the income, the six surviving children of Sarah Neilson and also Dorothy each received one-eighth of one twenty-fourth, and the balance was received by Ellen Coonan.

Jacob Le Roy died in 1925, without issue, and his share of the income was claimed by his brother, Herman, and by Ellen Coonan. An account was filed, and the Auditing Judge awarded his share, one twenty-fourth, to Ellen Coonan, and said: "If Jacob Rutgers Le Roy had left issue, they would, in my opinion, be entitled to his share of the income under the rule in Rowland's Estate (141 Pa. 553), but the codicil clearly points out the intention of the testator to restrict Herman's share of the income to one-eighth of the income received by Amelia, his mother, during her life. The line or stirps of Jacob having become extinct by his death without issue, how can this purely accidental circumstance operate to enlarge Herman's share, which is fixed by the will? It seems to me that this would do violence to the testator's express intention." Exceptions filed to this adjudication were dismissed by the court, Van Dusen, J., 9 D. & C. 793.

William Neilson died in 1927, without issue, and Frederick died in 1929, survived by a daughter, Mary Sarah. The trustee filed an account and the Auditing Judge awarded the share formerly received by William to Ellen Coonan, and the share formerly received by Frederick to his daughter, Mary Sarah. This was clearly in accordance with the prior decisions of the court, and no exceptions were filed.

Ellen Coonan died in 1930, so that the trust then terminated, and the principal of the estate is now distributable. The will provides, on the death of the last survivor of the daughters of the testator, "The whole of my estate

shall be divided per capita among my grandchildren the legal issue of my aforesaid daughters." There were in all ten grandchildren, of whom five are now surviving, viz., Herman, son of Amelia Le Roy, and Thomas, Lewis, Emma and Mary Alice, children of Sarah Neilson. Jacob Le Roy died without issue. Sarah Neilson, daughter of Sarah Neilson, and William Neilson, a son, are deceased, without issue, but Robert, who died in 1894, left a daughter, Dorothy, and Frederick, who died in 1929, left a daughter, Mary Sarah, both of whom are living.

Three methods of distribution were presented at the argument:

First. To the five surviving grandchildren, excluding the great-grandchildren, Dorothy, daughter of Robert, and Mary Sarah, daughter of Frederick, and also excluding the estates of both Robert and Frederick, thus making a distribution in fifths.

Second. To the five surviving grandchildren, including also the two great-grandchildren, Dorothy and Mary Sarah, thus making a distribution in sevenths.

Third. To the five surviving grandchildren and the estates of the five deceased grandchildren, thus making a distribution in tenths.

The Auditing Judge adopted the first of the above methods of distribution, holding, first, that the word "issue" in the codicil was used in the sense of "children," and that Dorothy and Mary Sarah were, therefore, not entitled; and, second, that the gift in remainder was contained only in the direction to divide, and, therefore, under our decisions, especially Rosengarten v. Ashton, 228 Pa. 389, the distributees should be ascertained as of the death of Ellen Coonan, their survivorship forming part of the description of the beneficiaries.

In interpreting the words "legal issue" we may disregard the testator's use of the adjective "legal." He uses this word frequently in his will and codicil, but he certainly cannot be supposed to have had in mind any distinction between legitimate and illegitimate offspring, and that he used the word without any tangible meaning is shown by his provision in the fifth paragraph of his will, where he directs "sixty dollars legal money per annum" to be used for the care of his family cemetery lot. The only question is, what did he mean by the words "my grandchildren the issue of my daughters?" In our opinion, he intended to include the children of his deceased grandchildren, and Dorothy and Mary Sarah should be included with the five living grandchildren according to the second scheme of distribution above mentioned.

It may be conceded that ordinarily "children" does not include "grandchildren," nor does "grandchildren" include "great-grandchildren." This is well settled, but this *prima facie* interpretation must yield if, on consideration of the whole will, it appears that the testator used such words in a broader sense. In Joyce's Estate, 30 Dist. R. 840, affirmed in 273 Pa. 404, the gift, after a life estate to the testator's wife, was "to . . . my grandchildren the children and issue of my four daughters, that may then be living, to be divided equally between them share and share alike—" and it was held that, under the gift to the grandchildren, great-grandchildren were included. Mr. Justice Simpson in his opinion said: "It has often been held that a gift to children will include grandchildren, if from other words in the will it appears that there was an intention to use the term in a more extensive sense (Steinmetz's Estate, 194 Pa. 611; Puterbaugh's Estate, 261 Pa. 235); a fortiori, a gift to grandchildren, under such circumstances, will include great-grandchildren, since the former is a word of equivocal import: Pemberton v.

Parke, 5 Binn. 601, 610. Here we have the added words 'and issue,' which are merely surplusage if not construed to extend the gift to the great-grandchildren; a result not permissible unless no other is reasonably possible: Ludwick's Estate, 269 Pa. 365."

This case is very similar to the present. Indeed, counsel for the living grandchildren, in his argument at bar, admitted that if the word "and" had been inserted, so that the will would read "among my grandchildren and legal issue of my daughter," Joyce's Estate would be controlling. The same argument applies here as in Joyce's Estate. Grandchildren are issue, and why should the testator add the word unless he intended to mean something by it? The word here is either an idle superfluity, or else it is explanatory, and the testator meant to say "my grandchildren, I mean the issue of my daughters." In addition to Joyce's Estate, we may refer to Campbell's Estate, 202 Pa. 459, Walker's Estate, 240 Pa. 1, and Towne's Estate, 260 Pa. 443. Moreover, the construction which we would give to the will is supported by the language of the codicil, where the word "issue" is used, and is in accordance with the prior decisions of this court with regard to the distribution of income. The testator, it seems to us, intended that the living descendants of each daughter should take a share of her income as long as the stirps or stock continued, and when there should be no such descendants or issue, the income of the surviving daughter should be increased. Under the prior decisions of the court, Dorothy and Mary Sarah, who are great-grandchildren of the testator, have been receiving a share of the income as representing their deceased parents, and no appeals were taken to the Supreme Court from our decisions, and while in our previous opinions we were careful to leave the present questions open for argument, we believe that if we were right in holding Dorothy and Mary Sarah as "issue" to be entitled to income, they should also, as issue, be entitled to principal.

We agree with the Auditing Judge that the remainders in this case were contingent upon the class of persons who are beneficiaries surviving the life tenants, although it may be that he attached too great importance to the direction to divide, and the case of Rosengarten v. Ashton, 228 Pa. 389, and similar cases, which were discussed in the opinion of the majority of this court in Buckman's Estate, 13 D. & C. 653. We disagree with the Auditing Judge concerning the description of the persons constituting the class, who, in our opinion, are living grandchildren and the issue of deceased grandchildren.

In view of what we have said, it seems unnecessary to discuss in detail the third theory, that the estate is divisible in tenths among the five living grandchildren and the estates of the five deceased grandchildren. Many decisions were cited by counsel in support of this scheme of distribution, of which Jenning's Estate, 266 Pa. 60, said by counsel to be squarely upon the point, may be regarded as typical. In that case the testator devised the estate to his wife for her life and at her death directed that the same be divided between his three children, share and share alike, and in the event of the death of any of said children leaving a child or children, such children to take the share of their parent. One of the three children survived the testator, but died before the life tenant, unmarried and without issue. Her third of the estate was held to be vested and was awarded to her personal representatives. Only one clause of a very simple will was in question, but in the present case we have arrived, as we said, at our conclusion from a consideration of the entire will and codicil, and we find enough therein to lead us to a contrary conclusion.

The exceptions filed by Dorothy Lewis Neilson and Mary Sarah Neilson are sustained. The exceptions filed by all other parties are dismissed, and the account is recommitted to the Auditing Judge to make distribution among the parties entitled according to this opinion.

LAMORELLE, P. J., dissenting.—I might well stand upon my adjudication as written, but because of the rulings in the majority opinion, I have felt it necessary to re-analyze the will and codicil and make a further study of the questions involved in the light of the excellent brief submitted as well as the arguments made at bar. As a result, being unconvinced of error in my interpretation, I deem it proper to epitomize my conclusions:

1. Nowhere in the will is the word "issue" used except to describe children of the four daughters—for whom the trust is created—or grandchildren of testator.

2. No *per capita* distribution can be made where the distributees stand on different platforms—and a *per capita* distribution is ordered by the will.

3. If the estate in remainder is vested, I could at least understand a *per capita* distribution among ten grandchildren, issue of two of the four *cestui que trusts*; if there is no vesting, but on the contrary a division among grandchildren living when the division became effective on the death of the survivor of the four daughters, I can understand a division among the then living grandchildren *per capita*; but nowhere do I find any warrant for a division among seven; and that is the result of the rule of construction adopted by the majority opinion; a one-seventh to each of five living children of two of the four daughters, and one-seventh each to two grandchildren of one of these daughters. Let us test the rule; suppose there were seven granddaughters of these four daughters, if the rule be a true one, would not there be a division among twelve people? Must that not follow if there is a *per capita* distribution—a division which prorates the fund among children and grandchildren of the daughters to the disadvantage of the children. Great precision marks the wording of the will. "And whereas," states testator in the seventh item thereof, "there are now living of my children four daughters," he names them and directs that the whole of the net annual income shall be equally divided among them and *paid* to them by his executors and trustees during their lifetime; on the death of either leaving *issue*, the share of the daughter so dying shall inure to and be *paid* to said *issue* or applied to their use during minority. "Issue" standing alone might cover all descendants of these daughters were it not for the fact that in the codicil testator defines what he meant by the word "issue" as contained in the will. If a daughter dies without issue, the income thus released goes to increase the shares of the daughters; the will then continues, "and on the death of the last of my aforesaid daughters it is my will and I hereby direct that the whole of my estate, not herein specifically disposed of shall be divided equally per capita among my grandchildren the legal issue of my aforenamed daughters, the shares of such of them as shall have attained the age of twenty one years to be paid to them without unreasonable delay, and the shares of such of them as may be then minors to be retained by my executors and trustees and the income therefrom applied to the use of said minors until they shall have attained the age of twenty one years when the principal of their share of my estate shall be paid to them respectively."

By codicil written some six weeks after the will, testator states that he has guarded against the application of the general rule of a stirpital distribution in the final distribution of his estate (see second paragraph of codicil), and by this he must refer to the disposition *per capita*, and thus continues: "I

now wish in furtherance of the same principle to modify that provision in the seventh clause of my aforenamed will whereby in case of the death of either of my daughters leaving legal issue her said issue shall receive the share of the net income of my estate to which their mother would be entitled if living until the principal of said estate shall be finally distributed by substituting therefor the following provision, namely that on the death of either of my daughters leaving legal issue one eighth of the share of such daughter of the net annual income of my estate shall be paid to, or if minors for the use and benefit of each of her said children and the residue if any of such share of the net income of my estate of the said deceased daughter shall be paid in equal portions to her surviving sisters."

Does he not thereby define what he meant by the use of the word issue in his will by the use of the word "mother?" The issue is to take what their mother would be entitled to if living; "their mother" spoken of was one of the four daughters of testator, and the issue necessarily confined to *children* of that mother, thus excluding grandchildren. Could language more clearly express the whole scheme and purpose of the will; the four daughters, each for life, and those who composed the class "their children" when the survivor of them died were to have the principal, and testator undertook to show what he had in mind by the word issue (both in the will and codicil) by that codicil: a *per capita* division, which necessarily, as before stated, excludes grandchildren of the daughters and great-grandchildren of the testator, "divided equally per capita among my grandchildren the legal issue of my aforenamed daughters. . . ." The word issue is synonymous with grandchildren (of testator), and in view of what I have heretofore set forth, ignores descendants other than those specifically described.

The adjudication as written should be upheld and all exceptions dismissed.