## Rogers's Estate

The facts appear from the adjudication of

VAN DUSEN, J., Auditing Judge.—Testator died December 31, 1884, and the present account relates to the residuary estate which was left in trust during the lifetime of the testator's children and the survivor of them, to pay the income to the children and the issue of deceased children, and at the end of the trust to give "unto each of my grandchildren living at that time the Sum of Fifty Thousand Dollars."

The trust has come to an end by the death of the last survivor of the children on February 29, 1932. There are nine living grandchildren, each of whom will get $50,000.

William Weightman, also known as William Weightman, 3rd, is a great-grandchild, the son of Malcolm Weightman, deceased, who was one of two sons of Martha Rogers Weightman, the daughter of the testator, also now deceased. William Weightman claims $50,000 also, claiming that the expression "grand-children" includes great-grandchildren. It so happens that his ancestors are dead. Whether there are other great-grandchildren whose ancestors are living, I am not informed.

Grandchildren, prima facie, means grandchildren only and not great-grand-children. Of course, the context may show a different meaning: Pemberton v. Parke, 5 Binn. 601, 610, and cases cited in Ball v. Weightman, infra; Lewis's Estate, 15 D. & C. 665. There is nothing in the immediate context to change the prima facie meaning. The circumstances—the effect of including great-grand-children—confirm this position.

The claimant appears to read the will as though $50,000 went, not to great-grandchildren simply, but to great-grandchildren whose parents are dead; possibly the sum of $50,000 to be divided among the children of the deceased grand-child, though that is not the argument as made. That would be reasonable, and perhaps the testator would add it to his will if we could consult him; but the will says nothing of the kind.

The claim might never have been made if it was not for the case of Ball v. Weightman, 273 Pa. 120. This same William Weightman became entitled to income under the clause in the will giving income during the life of the trust to the "issue" (in one clause) of deceased children, or to their "descendants" (in another clause). There was a spendthrift clause, applicable in the first

instance to "children" and, in a proviso to such clause, to "grandchildren." The Supreme Court held that the spendthrift provisions were applicable to all recipients of income. These provisions were equally applicable in reason to all the classes; and the Supreme Court referred to the loose use by the testator of the words "issue," "descendants" and "grandchildren," changing from one to the other without apparent purpose.

The argument now made, therefore, is, that if "grandchildren" in the spendthrift clause includes great-grandchildren, the same must be true in the disposition of principal. That is, that each great-grandchild gets $50,000 whether the parent is living or dead. No one else makes such a claim, and if the great-grandchildren are many, there might be so many sums of $50,000 to provide for, that no grandchild or great-grandchild, in the result, would get anywhere near $50,000. If only great-grandchildren whose parents are dead are to be provided for (which the will is far from saying), a branch of the family where there are two or more great-grandchildren would get much more than a living grandchild. The reason which impelled the conclusion in the Ball case is absent here; and the practical reason is to the contrary. I reject the claim of William Weightman.

The will also provided for an annuity to the widow of any son of $1500 per year, and directed that at the end of the trust, the trustee should pay over to the annuitants "the principal of her or their annuities, so as to enable the trustees to commence the preparation of the Home hereinafter mentioned." Sophie Selden Rogers, widow of a son, is the only surviving annuitant, and she now claims as the "principal" of her annuity such sum as this court would set aside to secure the annuity if the court was called upon to do so. The rate of interest upon the basis of which the fund shall be calculated is left to the judgment of the court, but the claimant is not averse to applying the usual three per cent. basis, which would give her $50,000.

The sum suggested is not the principal of an annuity. It is only a fund set aside to secure the annuity. When the annuitant dies, the whole annuity fund falls into the fund out of which it was carved. The word "principal" is not happily chosen, but the testator must have meant by it such sum as would purchase an annuity (the present worth of the annuity). The legatee is eighty years of age, and there will be awarded to her such sum as will buy her an annuity of $1500 a year from a reputable insurance company. The sum may be ascertained and brought into the schedule of distribution.

*Walter N. Keating* and *Philip Price*, for exceptions.

*W. Logan MacCoy*, of *MacCoy, Evans, Hutchinson & Lewis*, contra.

STEARNE, J., July 1, 1932.—Two questions are presented by the exceptions: (1) Whether under the interpretation of this will "great-grandchildren" are included in the designation "grandchildren," and (2) what passes under the gift of the "principal" of an annuity.

Reduced to its lowest terms, testator placed his residuary estate in trust for the benefit of all his children for their lives and for the life of the survivor. He contemplated the successive decease of his children, with and without issue, and surviving spouses. Where a child died, leaving issue—children or descendants of children—such issue took an estate in such income per autre vie until the death of the last surviving child. When the death of the last surviving child occurred, testator gave "unto each of my grandchildren living at that time the sum of $50,000." Testator directed the residue of his estate to be held in trust for the establishment and maintenance of a home for the

aged. One great-grandson, a child of a deceased grandson, claims to be entitled to a $50,000 legacy upon the theory that the gift of such legacies to grandchildren included and comprehended great-grandchildren.

Testator also gave certain annuities by his will. He contemplated that some of the annuitants might survive all of his children. In such event, desiring at that time the final settlement and distribution of his estate, testator directed that his trustees pay over to such annuitants "the principal of her or their annuities." The expressed testamentary purpose for such provision was to accelerate the establishment of the home. The only annuitant who survived the survivor of testator's children was a widow of a son who, under the will, was entitled to and had been receiving a $1500 annuity. This annuitant is now eighty years of age. She claims as the "principal" of the annuity such sum of money as this court would have ordinarily set aside at the commencement of the annuity to insure such annual payment.

Upon the first question, we are of opinion that the auditing judge was clearly correct in refusing to award the great-grandson the $50,000 legacy which he claims. Exceptant relies upon Ball v. Weightman, 273 Pa. 120, as the final interpretation, by our Supreme Court, of the present will, as respects both principal and income. As we read that case, the Supreme Court was dealing alone with the application of the spendthrift clause as respects income, which was without question due and payable to this great-grandson. The exceptant, as a descendant of his deceased father, was then sharing the income to which his father (a grandson of testator — the son of a deceased child) had theretofore been entitled and which, under the will, was continued to the descendants until the death of the last surviving child of testator. The attaching creditor urged that the terms of the will extended the protection of the spendthrift clause no further than grandchildren, and maintained that the shares of all descendants, other than children and grandchildren, were free from such restriction. Such contention was negatived by the Supreme Court. Mr. Justice Walling wrote, page 123:

"Testator's manifest purpose was to secure the income of his estate for the personal use of his descendants during the life of the trust, and such protection is no more essential to a child or grandchild than to a great-grandchild, possibly less, as the latter would ordinarily be younger. From the entire will, we conclude testator intended to protect alike all his beneficiaries and by the term grandchildren to include great-grandchildren when entitled to share under the trust."

As we interpret this will, it seems apparent that as respects *income*, all descendants of deceased children were entitled to share per autre vie until the death of the last surviving child. However, concerning the *principal*, he manifested not the slightest intention to preserve the principal for the benefit of his children's descendants. His main and ultimate testamentary object was the establishment and maintenance of a home for the aged. When his last surviving child died, his gift was $50,000 to "each grandchild who then survived." Such gift was not limited to grandchildren, but to *surviving grandchildren*. The disposition of the principal, unlike that of income, made no provision for descendants of deceased grandchildren.

The exceptions of William Weightman, 3rd, are dismissed.

As to the second question: Unquestionably the quantum of a gift of the "principal" of an annuity is difficult of solution. The language of the testator must be considered in the context of the entire will and all the surrounding circumstances. The problem is to ascertain the correct testamentary intent as to the size of the legacy. What the testator clearly contemplated was the

possibility (now an actuality) that some of the annuitants might outlive his last surviving child. Upon the decease of his last surviving child, testator required the final and absolute distribution of his estate. His reason was that his projected charitable benefaction—the establishment of a home for the aged—should not be retarded or impeded by any outstanding and unliquidated annuity obligations which he had fixed by his will. Testator, therefore, directed, in perhaps somewhat ambiguous language, that, upon the happening of that event, the annuitants should receive the "principal" of their annuities. In our view, "principal" of the annuity was used by the testator as the equivalent of the "value" of such annuity at the time of the cessation of the annual payments. In the sense used by the testator, the subject matter is more or less analogous to a wasting asset. The longer the annuity was paid, and the older the annuitant became, the less valuable was the annuity. All other annuitants received their annuities until their respective deaths. This annuitant has regularly received her annual annuity to date. In our opinion, this annuitant is entitled to a sum of money computed upon the value of her annuity, ascertained by reference to the standard mortality tables, at her age, and as of the date of the death of the last surviving of testator's children, to wit, February 29, 1932. Such method of valuing an annuity is regularly employed by the register of wills and by the Federal authorities in assessing inheritance taxes. This appears most just and equitable and is manifestly the result sought by the testator. Upon receipt of such a sum, the annuitant may elect whether she will purchase an annuity for the remainder of her life or whether she will use and apply the principal as she may see fit. Such a solution of the problem places both the estate and the annuitant in an equal situation so far as the compliance with the terms of the will is concerned. The estate liquidates its obligation and the annuitant receives a principal sum of money as the full equivalent of her annuity.

With the testamentary intent so plain, it would seem unnecessary to discuss the claim of the annuitant that she should receive a sum theoretically based upon the amount which the court would have probably set apart to insure such an annuity had the court been called upon to do so at the inception of the trust. No such sum was ever in fact set aside and no such request was ever made. In the present circumstances, as the whole residuary estate was in trust until the death of the surviving child, such earmarking, for practical purposes, became unnecessary. Even though it had been, under the language of this will, it does not follow that the annuitant would have received such a fund. For the reason given above, this was not what the testator intended.

Annuitant further complains that the auditing judge did not award interest upon the principal sum so awarded to her. He did, however, direct that the annuity payments should continue until the principal sum should be so set aside and paid to the annuitant. However, as we view it, the annuity was only payable until the death of the testator's surviving child, and cannot be extended beyond that time. On that date, to wit, February 29, 1932, the annual annuity payment ceased, and annuitant was entitled to the principal sum calculated as hereinabove indicated, together with interest thereon until date of actual payment.

The adjudication is modified as herein stipulated. A schedule of distribution, in accordance with the adjudication and this opinion, is directed to be filed forthwith.

All exceptions are dismissed and the adjudication, as modified, is confirmed absolutely.